IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :        CRIMINAL ACTION
                                :
            v.                  :
                                :
WILLIAM KITSCH                  :        NO. 03-594-01

MEMORANDUM

Dalzell, J.                                         August 1, 2008

            A Grand Jury five years ago charged William Kitsch in a

three count indictment alleging possession of firearms,

ammunition, and body armor by a convicted felon.  By motion in

limine, Kitsch seeks leave to raise a defense of entrapment by

estoppel and to require the Government to prove scienter with

regard to his status as a felon.  Because this case presents an

unusual, perhaps unique, factual scenario, especially in light of

the Supreme Court's recent decision in Dist. of Columbia v.

Heller, 128 S. Ct. 2783 (2008), we address these issues at some

length.


I.    **Facts**[1]

            In 1988 and 1989, Kitsch was cooperating with law

enforcement officials in Atlantic County, New Jersey in an

_____

            [1] The facts are largely undisputed.  Because we must
decide whether Kitsch's version of the story would, if credited
by the jury, justify acquittal, we resolve any factual disputes
in his favor for purposes of this motion.

investigation against a man named Dino Starn who was, among other things, growing marijuana in a barn on his property.  As a means of helping the narcotics officer with whom he was working obtain evidence against Starn, Kitsch set a small, smoky fire on the windowsill of the barn and then promptly called the fire department.  When the fire department arrived, it found the marijuana growing in the barn and Starn was later charged.

As a result of the fire, Kitsch was charged with third-degree arson, a felony under both New Jersey and federal law.  He pled guilty to the state offense after meeting with law enforcement officials who told him they would set aside the conviction and Kitsch could live as though the event had never happened.  Although he served a thirty-day custodial sentence on Sundays, Kitsch avers that he truly and reasonably believed that his conviction had either been set aside or expunged.

Kitsch was also sentenced to two years' probation.  When he initially reported to the probation department he was told that the department would contact him to assign him a probation officer and tell him when and where to report.  When the probation department did not contact him again, Kitsch took this as confirmation of his understanding that his conviction had

indeed been set aside.  Kitsch continued to vote[2] and exercise

other incidents of citizenship without restriction.

     At some later date, Kitsch decided to begin collecting

firearms.  He contacted Theodore Beck, a federally licensed

firearms dealer whom he had known for many years.  He told Beck

that there was legal trouble in his past, but that he believed it

had been set aside.  Beck ran a search for Kitsch in his

computerized database and found no prior criminal record.  This

finding again reinforced Kitsch's good faith belief that his

conviction had been set aside and that his record was now clean.

In reliance on this information, Kitsch began purchasing firearms

from Beck and from other federally licensed dealers.  At no time

did any dealer find anything during a background check that

disqualified Kitsch from purchasing a firearm.

     In 2003, the Secret Service began investigating a

posting Kitsch made in an Internet chat room where he suggested

that if the National Security Agency could take out Osama Bin

Laden, it could perhaps do the same to Bill Clinton.  In

---

[2] During the time of his custodial sentence and probation, he was ineligible to vote under New Jersey law.  N.J. Stat. Ann. § 19:4-1.  Kitsch does not specifically aver that he voted during this period, but since the sentence lasted more than two years he would certainly have had the opportunity to do so.

following up on the posting, Secret Service agents came to meet

with Kitsch.  During a meeting at his home in May of 2003, Kitsch

voluntarily surrendered a handgun he was carrying, which was

given back to him after the meeting.  Kitsch also informed the

agents about his gun collection.  During the subsequent

investigation, federal agents determined that Kitsch was a

convicted felon.  In August of 2003, agents returned to Kitsch's

house with a search warrant and seized many firearms, a great

deal of ammunition, and body armor.[3]


II.  **Analysis**

    **A.  Scienter**

    Kitsch first asks us to examine the scienter

---

[3] To be precise, agents found a 7.62x39mm Romanian SAR-1 rifle, a 7.62x39mm Romanian WASR-10 rifle, a 12-gauge Mossberg shotgun with pistol grip, a .22 caliber Remington semi-automatic rife, a .22 caliber Henry Survival semi-automatic rifle, a 9mm Glock semi-automatic pistol, two .357 magnum caliber Smith & Wesson revolvers, a .25 caliber Fraser semi-automatic pistol, a 9mm Walther semi-automatic pistol, and a .32 caliber Beretta semi-automatic pistol.  They also found 153 rounds of .38 caliber ammunition, 1,048 rounds of 9mm ammunition, 70 rounds of .357 caliber ammunition, 249 rounds of .32 caliber ammunition, 6 rounds of .25 caliber ammunition, 20 rounds of 5.56 ammunition, 108 12-gauge shotgun shells, 981 rounds of .223 caliber ammunition, 5,934 rounds of 7.62x39mm ammunition, and 11,573 rounds of .22 caliber ammunition.

requirement for a violation of 18 U.S.C. § 922(g)(1).  The
statute says, in relevant part:

> It shall be unlawful for any person ... who
> has been convicted in any court of, a crime
> punishable by imprisonment for a term
> exceeding one year ... to ship or transport
> in interstate or foreign commerce, or possess
> in or affecting commerce, any firearm or
> ammunition; or to receive any firearm or
> ammunition which has been shipped or
> transported in interstate or foreign
> commerce.

The statute does not include any conviction "which has been
expunged, or set aside or for which a person has been pardoned or
has had civil rights restored."  18 U.S.C. § 921(a)(20).  The
operative statute contains no explicit scienter provision.

In 1986, Congress enacted the Firearms Owners'
Protection Act ("FOPA"), Pub. L. 99-308, 100 Stat. 449.  Although
FOPA did not add a scienter requirement to the operative
provision, it did modify the related penalty provision, 18 U.S.C.
§ 924(a)(2), adding the word "knowingly."  As modified, Section
924(a)(2) now reads, "Whoever knowingly violates subsection
(a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be
fined as provided in this title, imprisoned not more than 10
years, or both."

The issue before us, then, is how to interpret the word "knowingly" in Section 924(a)(2).  The Government contends that only the possession of the firearm must be knowing, while Kitsch contends that the scienter requirement must also apply to the existence of a prior felony[4] conviction.

As the starting point of our analysis, we look at the Supreme Court's recent jurisprudence dealing with when scienter or <u>mens rea</u>[5] should be implied.

In <u>United States v. Staples</u>, 511 U.S. 600 (1994), the Supreme Court addressed the existence of a scienter requirement in 26 U.S.C. § 5861(d), which criminalizes the possession of a "machine gun."  At issue was whether Section 5861(d) required the Government to prove that the defendant knew the firearm had the characteristics that made it a "machine gun" under the statute.  Justice Thomas, writing for the majority, noted that "offenses that require no <u>mens rea</u> generally are disfavored" and that "some indication of congressional intent, express or implied, is

_____

[4] Although the statute refers to "a crime punishable by imprisonment for a term exceeding one year," we will, for purposes of simplicity, use the more common locution "felony" as a shorthand for the statutory definition and will refer to one who has such a conviction on his or her record as a "felon."

[5] We will use the two terms interchangeably.

required to dispense with _mens_ _rea_ as an element of a crime."
_Id._ at 606 (internal citations omitted).  Examining the
situations in which courts have allowed criminal sanctions to
attach in the absence of scienter, the Court "ha[s] reasoned that
as long as a defendant knows that he is dealing with a dangerous
device of a character that places him 'in responsible relation to
a public danger,' he should be alerted to the probability of
strict regulation" and is therefore under a burden to determine
the nature of that regulation.  _Id._ at 607 (quoting _United States_
_v. Dotterweich_, 320 U.S. 277, 281 (1943)).  _Staples_ dismissed the
Government's contention that all guns were dangerous devices of
this sort, finding that "there is a long tradition of widespread
lawful gun ownership by private individuals in this county," and
therefore "[g]uns in general are not 'deleterious devices or
products or obnoxious waste materials' that put their owners on
notice" of the sort of regulation that _Dotterweich_ contemplated.
_Id._ at 610-11 (quoting _United States v. Int'l Minerals & Chem_
_Corp.,_ 402 U.S. 558, 565 (1971)).  Finally, _Staples_ noted that
the severity of the punishment -- like the charges against
Kitsch, Section 5861(d) carries a maximum penalty of ten years'
imprisonment -- was further evidence that Congress did not intend
to dispense with a _mens_ _rea_ requirement.  _Id._ at 618-19.  Thus,

7

because of the strict penalty and the observation that
"dispensing with mens rea would require the defendant to have
knowledge only of traditionally lawful conduct," Id. at 618, the
Court found that Congress intended to require scienter with
regard to the characteristics of the firearm.

While Staples dealt only with an issue of statutory
construction, United States v. X-Citement Video, Inc., 513 U.S.
64 (1994), decided early the following term, adds a
constitutional dimension to the analysis.  In X-Citement Video,
the statute at issue, 18 U.S.C. § 2252, prohibited the sending or
receiving of visual depictions of minors engaged in sexually
explicit conduct.  Although the statute contained the word
"knowingly," the placement of that word seemed to imply that,
while the transportation or receipt had to be knowing, the
defendant did not have to know that the visual depictions
involved minors.  The Ninth Circuit, finding that there was no
scienter requirement as to the age of the performers in the
videos, had struck down the statute as a violation of the First
Amendment.  United States v. X-Citement Video, Inc., 982 F.2d
1285 (9th Cir. 1992).

The Supreme Court again examined the presumption that
"some form of scienter is to be implied in a criminal statute

8

even if not expressed" and, because of the added constitutional dimension, the canon of construction that "a statute is to be construed where fairly possible so as to avoid substantial constitutional questions." X-Citement Video, 513 U.S. at 69. The Court read Staples and its antecedents as "instruct[ing] that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." Id. at 72. Because "the age of the performers is the crucial element separating legal innocence from wrongful conduct," the Court found a strong presumption in favor of a scienter requirement as to that element. Id. at 73.

This presumption was further heightened by the constitutional element. Because "a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts," the Court found it "incumbent upon us to read the statute to eliminate those doubts so long as such a reading is not plainly contrary to the intent of Congress." Id. at 78.

We take three major lessons from Staples and X-Citement Video. First, where a particular element of a criminal statute separates criminal conduct from otherwise lawful conduct, there is a presumption, rebuttable only by clear evidence of

9

congressional intent, that a scienter requirement should attach

to that element.  Second, where the potential criminal penalties

for violation of the statute are severe, that presumption is

heightened.  Finally, where the lack of a scienter requirement

would raise serious doubts about the constitutionality of a

criminal statute, we should read the statute as containing such a

requirement unless that reading is contrary to the statute's

plain terms.  With those teachings in mind, we now examine the

particular statute at issue here.

        Two appellate cases have addressed the scienter

requirement of Section 922(g)(1) in the context of Staples and X-

Citement Video.  In United States v. Langley, 62 F.3d 602 (4th

Cir. 1995) (en banc), the defendant challenged his conviction

under Section 922(g)(1) on the basis that the district court had

failed to instruct the jury that the Government was required to

prove that defendant knew he was a convicted felon.  The Court of

Appeals for the Fourth Circuit found that no scienter requirement

existed with regard to that element and affirmed.  The court

began its analysis, not with Staples and X-Citement Video, which

had very recently been decided, but with the observation that

"absent a clear manifestation of contrary intent, a newly-enacted

or revised statute is presumed to be harmonious with existing law

and its judicial construction." Id. at 605 (quoting Estate of
Wood v. C.I.R., 909 F.2d 1155, 1160 (8th Cir. 1990)). Because
"no court prior to FOPA required the government to prove
knowledge of felony status ... under § 922(g)(1)'s predecessor
statutes," the Langley majority found that no scienter
requirement should be read into that element absent clear
congressional intent. Id. The court then examined the
legislative history and found "no suggestion that Congress
intended to dispense with the judicial interpretation of §
922(g)(1)'s predecessor statutes." Id. While acknowledging that
it is "far from clear ... exactly what Congress intended to
modify in each section of 922," the majority concluded that "[a]t
most ... Congress intended to avoid the prosecution of
'unintentional missteps.'" Id. (quoting United States v.
Obiechie, 38 F.3d 309, 312 (7th Cir. 1994)). The Fourth Circuit
majority found that "the act of possessing a firearm by a felon
does not fall into the class of 'unintentional missteps'
envisioned by Congress when it enacted FOPA." Id. at 606
(quoting Obiechie 38 F.3d at 312). Finally, the majority
distinguished Staples and X-Citement Video, finding that "a
person who pleads guilty to, or is convicted by jury of, a felony

cannot, thereafter, reasonably expect to be free from regulation when possessing a firearm."  Id. at 607.[6]

As we read Staples and X-Citement Video, where an element of a statute has the effect of making otherwise lawful conduct a criminal offense -- as, for example, the status of being a felon in the case of Section 922(g)(1) -- our analysis must begin with the presumption that the element includes a scienter requirement.  See Staples, 511 U.S. at 618-19; X-Citement Video, 513 U.S. at 72.  Langley takes the opposite approach and begins with a presumption that there is no scienter requirement on the basis of judicial constructions of the predecessor statute.  The majority in Langley assumed that Congress legislated with thorough knowledge of the jurisprudence surrounding the statutes being modified.  Langley apparently assumes, however, that Congress ignored "the familiar proposition that '[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence,'" United States v. U.S. Gypsum Co., 438 U.S. 422, 436 (1978) (quoting Dennis v. United States, 341 U.S. 494, 500

---

[6] We need not scrutinize the other case to reach this issue, United States v. Capps, 77 F.3d 350 (10th Cir. 1996) since it closely follows the analysis in Langley and reaches an identical result.

(1951)), and the so-called _Morissette_ presumption, see _Morissette v. United States_, 342 U.S. 246, 271 (1952), that _mens rea_ extends to elements that take otherwise lawful conduct and subject it to criminal sanction.  We do not think this depiction of Congress' knowledge is plausible or that it is consistent with the Supreme Court's jurisprudence.  Further, by taking earlier judicial constructions of the predecessor statutes as its starting point, _Langley_ ignores the possibility that those constructions were inconsistent with _Staples_ and _X-Citement Video_ and that those decisions abrogated them.

Rather, we find ourselves far more persuaded by Judge Phillips's _tour de force_ in partial concurrence with the _Langley_ majority.[7]  Judge Phillips notes that the presumption that _mens rea_ applies "runs not only to those elements that define the core _conduct_ proscribed but also to any elements that define _circumstances_ upon which criminality of the conduct turns."  62 F.3d 602, 614 (Phillips, J., concurring and dissenting).  The Supreme Court has consistently been unwilling to find sufficient contrary intent to overcome that presumption either in congressional silence or in ambiguous statutory text or

---

[7] Three other judges joined Judge Phillips's opinion.

legislative history.  Id. at 615 (citing Staples, 511 U.S. at

606; X-Citement Video, 513 U.S. at 77-78).  Judge Phillips then

embarks on a detailed reading of the legislative history --

comparing the different versions of FOPA that were introduced in

the 96th through 99th Congresses -- and finds in them no

indication that Congress had a clear intent to exclude the

defendant's criminal history status from the scienter

requirement.  Id. at 615-17.  As Judge Phillips observes, the

primary item of legislative history the Government proffered in

favor of its reading of the statute applied to an earlier version

of FOPA that significantly differed from the version ultimately

adopted.  Id. at 616-17.  At the end of his analysis, Judge

Phillips finds -- as do we -- no principled distinction between

the mens rea requirement in the felon-in-possession statute and

those at issue in Morissette, Liparota v. United States, 471 U.S.

419 (1985), Staples, and X-Citement Video.

        Even if we found the Langley majority's analysis

convincing -- and, to be explicit, we do not -- we would also

have to address the factual differences between that case and

Kitsch's.  In Langley, the defendant had no basis for claiming

that he lacked knowledge of his status as a convicted felon.  His

claim was only that the district court erred in failing to

14

instruct the jury that it had to find such knowledge.  Indeed,
Judge Phillips's concurring and dissenting opinion would have
affirmed on the basis that the district court's error in failing
to give the instruction was harmless.  <u>Langley</u>, 62 F.3d at 619.
Here, by contrast, Kitsch has plausibly averred that he
reasonably believed that his conviction had been expunged or set
aside and was, therefore, not a conviction for purposes of the
statute.[8]  Thus, Kitsch presents us with the very defendant the
<u>Langley</u> majority thought could not exist: one who is a felon
within the statutory definition but has no reason to believe that
he is subject to additional regulation.  Indeed, the <u>Langley</u>
majority's finding that "a person who pleads guilty to, or is
convicted by jury of, a felony cannot, thereafter, reasonably
expect to be free from regulation when possessing a firearm," <u>id.</u>
at 607, assumes the very fact in issue.  Only a knowing felon can
reasonably expect to be subject to additional regulation.  While
the class of people who have been convicted of a felony, but to
whom knowledge of that fact cannot be imputed, is small, the

---

[8] Although it is a "deeply rooted" element of American
jurisprudence that "ignorance of the law or a mistake of law is
no defense to criminal prosecution," <u>Cheek v. United States</u>, 498
U.S. 192, 199 (1991), Kitsch appears to have been keenly aware of
the portions of the federal firearms laws relevant to him.

facts averred in this case demonstrate that it is not non-existent.[9]

Because the universe of scenarios is limited in which knowledge of the defendant's status as a felon can plausibly be contested, it is not surprising that Kitsch cannot cite to a case in which a court has applied the scienter requirement he seeks. The cases the parties cite in which this issue has been addressed fall into two categories. Most of them, like Langley, involve defendants who have no plausible claim to lack of knowledge but nonetheless claim that the jury instructions were defective because they failed to require the jury to find scienter as to the prior conviction. It is not surprising that the argument finds little purchase under those conditions and frequently, as Judge Phillips did in Langley, courts have found that any error caused by failure to instruct on scienter would be harmless. A few of the cases involve the question of whether a restoration of civil rights to a felon is sufficient to trigger the saving provision of 18 U.S.C. § 921(a)(20). See, e.g., United States v. Estrella, 104 F.3d 3 (1st Cir. 1997). Because such cases

_____

[9] In his brief, Kitsch also posits that defendants with traumatic brain injuries or strokes might find themselves in this category. Def. Br. at 4.

typically involve intricate questions about the restoration of civil rights under state law, they have generally involved not a defendant's mistake of fact as to his prior conviction but rather a mistake of law as to the nature of the restoration.[10]  As we noted above, mistake of law is generally not a defense and so these cases did not need to reach the more difficult questions we face here.

It is for this reason that the Government's claim that felon-in-possession is a "general intent crime," see Gov't Br. at 4, is not dispositive.  To be sure, our Court of Appeals has referred to a violation of Section 922(g) as "a crime of general intent."  United States v. Williams, 892 F.2d 296, 303 (3d Cir. 1989).  That portion of Williams, however, dealt with an attempt by the defendant to negate his mens rea with regard to the possession element based on voluntary intoxication.  Thus, the only finding in Williams for which the general intent nature of the crime is a predicate is "[f]or general intent crimes, evidence of voluntary intoxication is not an acceptable method of

---

[10] In most of these cases, as in Estrella, the restoration comes by dint of statute rather than some further proceeding.  It is, therefore, entirely possible that a defendant, understanding completely his factual situation, could be mistaken as to whether such a restoration had occurred by operation of law.

negating the required intent."  Id.  That is clearly not relevant here.

Our Court of Appeals has most recently described the distinction between general and specific intent as: "Specific intent requires not simply the general intent to accomplish an act with no particular end in mind, but the additional deliberate and conscious purpose of accomplishing a specific and prohibited result."  Pierre v. Attorney General, 528 F.3d 180, 189 (3d Cir. 2008) (en banc).  It is, therefore, unsurprising that our Court of Appeals has described Section 922(g)(1) as a general intent crime since nothing in the statute could reasonably be read to require the "deliberate and conscious purpose of accomplishing a specific and prohibited result."  Under this definition, the machine gun statute at issue in Staples would also properly be described as a "general intent" crime.  That does not, however, mean that no mens rea requirement attaches to circumstance elements that must accompany the prohibited act.

In United States v. Weiler, 458 F.2d 474 (3d Cir. 1972), the defendant was accused of violating Section 922(g)(1) and requested jury instructions requiring the Government to prove both that he knew he had been convicted of a felony and that the gun was capable of expelling a projectile, i.e. that it met the

18

statutory definition of a "firearm".  The Court found that "[t]he general instruction with respect to intent and mistake or accident was all the defendant was entitled to on this point in the absence of any evidence supporting the particularized theories contained in the two requested instructions."  Id. at 475.  Were it the case, as the Government contends, that no scienter requirement _ever_ attaches to the prior felony conviction element, Weiler would properly have been disposed of by such a blanket rule.[11]  Instead, however, the Court determined that he was not entitled to the instructions _because_ he had presented no evidence supporting a theory that he lacked such scienter.  The clear implication of that ruling is that, under at least some other factual circumstances, such an instruction might be required.  If any facts could ever require such an instruction, what Kitsch avers here must be sufficient to do so.

Finally, even were we not to find that Staples alone provides sufficient support for granting Kitsch's motion, we would have to address the constitutional questions raised by the Supreme Court's decision just over a month ago in Heller.

---

[11] Even had Weiler adopted such a blanket rule, that would not necessarily be dispositive here because Weiler predates Staples, X-Citement Video, and, of course, Heller.

19

In <u>Heller</u>, the Court found for the first time that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation."  128 S. Ct. at 2797. The Court acknowledged that long-standing limitations on the ownership and use of weapons, including Section 922(g)(1), were consistent with that guarantee.  <u>Id.</u> at 2816-17.  Nevertheless, because the Constitution directly guarantees the right, such limitations are subject to some level of increased scrutiny.[12] As Justice Scalia put it for the Court, "[t]he very enumeration of the right takes out of the hands of government -- even the Third Branch of Government -- the power to decide on a case-by-case basis whether the right is <u>really worth</u> insisting upon." <u>Id.</u> at 2821.

A statute that imposes criminal penalties for the exercise of an enumerated constitutional right despite defendant's reasonable belief in good faith that he has complied with the law must, at the very least, raise constitutional doubts.  Post-<u>Heller</u>, the Government's desired construction of

---

[12] <u>Heller</u> did not address the precise degree of scrutiny required in such cases because it found that the law at issue would be unconstitutional "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights." <u>Id.</u> at 2817.

Section 922(g)(1) imposes just such a burden on defendants who, for whatever reason, reasonably believe that they are not felons within the statutory definition.  Faced with a statute that raises this sort of doubt, it is "incumbent upon us to read the statute to eliminate those doubts so long as such a reading is not plainly contrary to the intent of Congress."  X-Citement Video, 513 U.S. at 78 (citing Edward J. DeBartolo Corp. v Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988)).

Here, the construction that we adopt -- which we would have done pre-Heller -- has the added benefit of avoiding potential doubts post-Heller about the statute's constitutionality, at least as applied to Kitsch.  Accordingly, we find that the word "knowingly" in 18 U.S.C. § 924(a)(2), when applied to the offense in 18 U.S.C. 922(g)(1), modifies both the elements of possession of the firearm and the status as a convicted felon.[13]  We will therefore grant defendant's motion as to this issue and will instruct the jury that, in order to convict Kitsch, the Government must prove beyond a reasonable

---

[13] Kitsch does not contend that any scienter requirement should apply to the interstate commerce element, which, as Judge Phillips notes in Langley, is purely jurisdictional.  62 F.3d at 619.

doubt that he knew or was willfully blind to the fact that he had a prior felony conviction that had not been set aside or expunged.

### B.  Entrapment by Estoppel

Kitsch also seeks to present a defense of entrapment by estoppel.  "This defense arises when a government official tells a defendant that certain conduct is legal and the defendant commits what otherwise would be a crime in reasonable reliance on the official representation."  United States v. Pitt, 193 F.3d 751, 758 (3d Cir. 1999).  A defendant who raises this defense must prove by a preponderance of the evidence that: "(1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement."  United States v. Stewart, 185 F.3d 112, 124 (3d Cir. 1999) (quoting United States v. West Indies Transp., Inc., 127 F.3d 299, 313 (3d Cir. 1997)).

Kitsch bases his claim on the statements of Theodore Beck, a federal firearms licensee ("FFL") and an acquaintance of Kitsch's.  The primary contested issue with regard to the defense in this case is whether an FFL is a government official for purposes of the entrapment by estoppel defense.  The Model Penal Code provision restricts the defense to reliance on "an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense."  MPC § 2.04(3)(b)(iv).  Kitsch argues that Beck, as an FFL, meets that definition because he is "authorized by the federal government to gather and dispense information in regards to the purchase of firearms" and is "statutorily mandated to fulfill several requirements when executing the sale of a firearm."  Def. Br. at 7.

Although our Court of Appeals has not, several other Circuits have addressed the question of whether an FFL is a government official for purposes of this defense.  Of these, only the Ninth Circuit, in a divided decision, has found that an FFL can be a government official for the purposes of an entrapment by estoppel defense.  In United States v. Tallmadge, 829 F.2d 767, 774 (9th Cir. 1987), the majority found that the Government has

given FFLs "the affirmative duty of inquiring of a prospective buyer whether he has a criminal record that would make it unlawful for him to purchase a firearm" and has required them "to inform buyers concerning the restrictions imposed by Congress on the purchase of firearms."  Based on that finding, the majority concluded that "[c]learly, the United States Government has made licensed firearms dealers federal agents in connection with the gathering and dispensing of information on the purchase of firearms."  Id.

Judge Kozinski vigorously dissented, finding that "the statements on which the majority relies as the basis of the estoppel were uttered by someone who is not even a federal employee, much less an official authorized to speak for the government."  Id. at 777 (Kozinski, J., dissenting).  Judge Kozinski pungently added, "[a] gun dealer is not a government official; he is a private individual whose economic interest lies in consummating the transaction, not scotching it.  Had Tallmadge wanted an authoritative interpretation of the applicable law, he could well have written to the Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, whose name and address is inscribed on the Firearms Transaction Record he was required to fill out."  Id. at 778.

Every other court of appeals to address the issue has found that an FFL is not a government official for this purpose. See United States v. Hardridge, 379 F.3d 1188, 1193 (10th Cir. 2004) (finding that FFLs "cannot provide an authoritative interpretation of what the law requires"); United States v. Howell, 37 F.3d 1197, 1206 (7th Cir. 1994) (finding that an FFL's "license to sell firearms does not transform him into a government official"); United States v. Billue, 994 F.2d 1562, 1569 (11th Cir. 1993) ("[A] federal license to sell firearms does not transform private licensees into government officials, thereby creating a potential entrapment by estoppel defense."); United States v. Austin, 915 F.2d 363, 366-67 (8th Cir. 1990) ("Despite the affirmative duty Congress has imposed upon federally licensed firearms dealers to enforce federal firearms laws at the point of sale, we cannot agree that this role, or their federal license to sell firearms, is sufficient to transform them into government officials, at least for purposes of the entrapment by estoppel defense.") (internal quotations omitted).

We find more persuasive Judge Kozinski's dissent and the rulings of the other circuits.  Although FFLs have a significant role to play in the enforcement of federal firearms

laws, that does not make them government officials whose
interpretations of the law should bind the Government.  The mere
fact that regulations on the sale of particular items give some
enforcement responsibilities to private sellers does not make
them government officials.  Were it otherwise, pharmacists,
liquor store clerks, and in some states gas station attendants --
see, e.g., N.J. Stat. Ann. § 34:3A-6, 3A-7 (prohibiting
dispensing of fuel by one who is not a gas station attendant and
requiring gas station attendants to enforce that prohibition) --
would all be government officials whose interpretations of law
are binding on public law enforcement.  We do not think such an
interpretation is consistent with the limited scope of the
entrapment by estoppel defense.

Because we find that Theodore Beck was not a government
official for purposes of the entrapment by estoppel defense,
Kitsch is not entitled to a jury instruction on that defense.


BY THE COURT:


/s/ Stewart Dalzell, J.

26

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :        CRIMINAL ACTION
                                :
            v.                  :
                                :
WILLIAM KITSCH                  :        NO. 03-594-01

ORDER

AND NOW, this 1st day of August, 2008, upon consideration of Kitsch's motion in limine (docket entry # 101), the Government's response (docket entry # 111), and Kitsch's reply (docket entry # 115) and for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that Kitsch's motion is GRANTED IN PART and DENIED IN PART as detailed in the Memorandum.

BY THE COURT:


/s/ Stewart Dalzell, J.